ANGELINA PUCCIA *vs.* HENRI A. SEVIGNE.
ANTONIO PUCCIA *vs.* SAME.

Suffolk. November 18, 1926. — January 7, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Negligence,* Contributory, In use of highway, Motor vehicle. *Agency,* Scope of employment. *Evidence,* Interrogatories. *Practice, Civil,* Request by jury after retirement, Exceptions.

At the trial of an action by a woman for personal injuries received when at eleven o'clock on a foggy night she was run into by an automobile of the defendant as, on a cross walk at an intersection of streets, she was crossing a street in a city, there was evidence that before starting across the street she looked and did not see any automobile approaching; that she looked ahead as she crossed the street; that she was struck when she was about two steps from the other side of the street; that she did not know how far away the automobile that struck her was when she first saw it, but that it was far away from her, and that she knew she had time to cross; that the driver of the automobile gave no signal of his approach. The driver testified that his car was not travelling at a rate of more than eight or nine miles an hour at the time of the accident. *Held,* that the questions, whether the negligence of the plaintiff contributed to the injury and whether the driver was negligent, were for the jury.

At the trial of an action for personal injuries caused when the plaintiff was run into by an automobile of the defendant driven by one in his general employ, the defendant and the driver testified that on the occasion of the accident the driver was permitted by the defendant to take the automobile to go to his, the driver's, house. The plaintiff introduced interrogatories in writing which had been propounded to the defendant and which he had answered as follows: "Int. 7. . . . kindly state fully and in detail how said . . . [driver] happened to be

operating said automobile on said date. A. Because it was his business to do so. — Int. 8. Was the said . . . [driver] employed by you on that date? A. Yes." There was no other evidence on the issue, whether the driver was acting within the scope of his employment. *Held*, that

(1) The answers to the interrogatories warranted a finding that the driver was employed by the defendant and was acting within the scope of his employment when the plaintiff was injured;

(2) It was not required as a matter of law that the answers to the interrogatories be so construed as to relate only to employment of the driver during the day, so that they would not refer to his employment at the time of the accident;

(3) Upon the answers to the interrogatories and all the other evidence, it could not have been ruled that the driver was not acting within the scope of his employment at the time of the accident.

The jury who heard the action above described, after retiring, returned and asked that the interrogatories and answers above quoted be read to them, and the judge complied with the request. The defendant's counsel then asked that testimony of the defendant on the same question be read. The judge refused to grant this request since the jury had not asked for it. The defendant did not save an exception. This court *stated* that, even if the defendant had saved an exception, a contention by the defendant, that the reading of the interrogatories and the answers and the refusal to comply with his request were prejudicial to the rights of the defendant and amounted to a charge on the facts, had no merit.

Two ACTIONS OF TORT described in the opinion. Writs dated December 7, 1923.

In the Superior Court, the actions were tried together before *Cox*, J. Material evidence is stated in the opinion. Motions by the defendant that verdicts be ordered in his favor were denied.

The entire statement in the bill of exceptions relating to the question by the jury to the judge was as follows:

"After the case had been given to the jury the jury returned and the following proceedings ensued:

"THE JUDGE: Mr. Foreman and Gentlemen: I have from you this question: 'May it please your Honor that we may have the Interrogatory that was introduced in the Puccia Case? Walter B. Jones, Foreman.' To that I replied, after conferring with counsel, who both happened to be here, you may not have the interrogatory; but counsel agree that, if you desire, you may return to court and have read to you such questions and answers in the interrogatories as

you indicate.    Then I have your final request: 'We desire
to return to hear Interrogatory read as to questions referring
to business the chauffeur was on, the evening of July 7th.
Walter B. Jones, Foreman.'

"I take it, from your questions, that you refer to Inter-
rogatory 7 and its answer.    Interrogatory 7 is, 'If you
answer  the interrogatory in the affirmative' — which was
as to whether Capuccio was operating the automobile of
the defendant — 'If you answer the interrogatory in the
affirmative, kindly state fully and in detail how said Cap-
uccio happened to be operating said automobile on said date.'
Is that the one to which you refer?

"THE FOREMAN: We want the one that refers to was he
under his instructions.

"THE JUDGE:   Perhaps if I  read the answer, — The
answer to that one which I have just read is, 'Because it
was his business to do so.'    Is that the one you have in
mind?

"THE FOREMAN: Your Honor, what is the one following
that?

"THE JUDGE: 'Was the said Capuccio employed by you
on that date?'   Answer: 'Yes.'   Want the next one?

"THE FOREMAN: Your Honor, I think that is all.

"THE DEFENDANT'S COUNSEL: May I ask the court that
Mr. Sevigne's testimony in regard to the two automobiles
be read to the jurymen in connection with that, as partly
explaining it?

"THE JUDGE: I don't see how I can do that unless the
jury desires it.   I think I must answer the questions which
they put, and only those.   Does that cover your inquiry,
Mr. Foreman and gentlemen?

"THE FOREMAN: Your Honor, that does.

"THE JUDGE: You may retire again."

The jury found for the plaintiffs: in the first action in
the sum of $3,500, and in the second action in the sum of
$500, of which $250 was remitted by order of the court.
The defendant alleged exceptions.

*A. G. Sleeper,* (*F. M. Ryder* with him,) for the defendant.
*J. M. Graham,* for the plaintiffs.

CROSBY, J.  The first action is brought to recover compensation for personal injuries, received by the plaintiff when struck by an automobile owned by the defendant and operated by his chauffeur, one Cappucio.  The second is brought by the husband of the plaintiff in the first action to recover consequential damages.  The accident occurred on July 7, 1923, at about eleven o'clock in the evening, on Hanover Street, in Boston, at its intersection with Parmenter Street and Richmond Street.

The plaintiff testified that before she started to cross Hanover Street from the northerly side, she looked toward her right and saw an automobile standing on the other side of the street near the corner of Richmond Street; that as she did not see any automobile approaching, she started across the street on the cross walk; that when she had reached the other side and was about two steps from the curbstone, she was thrown down and did not know what happened afterwards.  On cross-examination she testified, in substance, that she did not know how far away the automobile that struck her was when she first saw it, but that it was far away from her, and that she knew she had time to cross; that she looked ahead as she crossed the street.  Other witnesses testified respecting the circumstances attending the accident.  There was evidence that it was a foggy night, and that before the plaintiff was struck the horn on the automobile was not sounded or other signal given as the automobile approached the intersection of the streets.

Upon the conflicting testimony it could not have been ruled that the plaintiff was not in the exercise of due care.  G. L. c. 231, § 85.  *Hennessey* v. *Taylor*, 189 Mass. 583.  *Beale* v. *Old Colony Street Railway*, 196 Mass. 119.  *Pawloski* v. *Hess*, 253 Mass. 478.

There was evidence of negligence by the operator of the automobile.  Although he testified that his car was not travelling at the rate of more than eight or nine miles an hour at the time of the accident, the jury were not bound to believe that testimony; if it were believed, it was not conclusive upon the question of negligence.  If, as they could have found, the driver approached the intersecting streets

at a rate of speed greater than was reasonable and proper, or failed to sound the horn or give any signal of his approach, it was a violation of G. L. c. 90, §§ 14, 17, and was evidence of negligence. *Patrick* v. *Deziel,* 223 Mass. 505. *Coope* v. *Scannell,* 238 Mass. 288. *Davicki* v. *Flanagan,* 250 Mass. 379, 381. *Pawloski* v. *Hess, supra.* Independently of a violation of the statute, it could have been found that the proximate cause of the plaintiff's injuries was negligence of the operator.

The question remains, whether there was any evidence warranting a finding that Cappucio at the time of the accident was acting within the scope of his employment. Both he and the defendant testified that on the evening in question he was permitted by the defendant to take the car to go to his house in Roxbury. The defendant lived in Winthrop. He admitted that Cappucio was in his general employment as a chauffeur. Interrogatories were propounded by the plaintiff to the defendant. The seventh and eighth and the answers thereto were as follows: "Int. 7. If you answer the interrogatory in the affirmative, kindly state fully and in detail how said Cappucio happened to be operating said automobile on said date. A. Because it was his business to do so. — Int. 8. Was the said Cappucio employed by you on that date? A. Yes." It could have been found from this evidence that Cappucio was employed by the defendant and was acting within the scope of his employment when the plaintiff was injured. The defendant earnestly argues that the answers elicited by these interrogatories related to the employment of the chauffeur during the day only, and did not refer to his employment at the time of the accident. The answers did not so limit the time of the employment and they could not be so construed as matter of law. It was a question for the jury to determine whether the answers included the time when the plaintiff was injured, and whether Cappucio was then engaged in his employer's business or was using the car for his own convenience. It may be assumed that the defendant knew, when he answered that the chauffeur was operating the car on that date because it was his business to do so, that the accident

on account of which this action had been brought against him occurred on the evening of July 7, 1923. If he had intended to make any distinction between the hours of that day, it could have been found that he would have qualified his answers accordingly. There was evidence that when required the employee occasionally operated the automobile in the evening at the request of the defendant. Upon the answers to the interrogatories and all the other evidence, it could not have been ruled that the chauffeur was not acting within the scope of his employment at the time of the accident. *Teague* v. *Martin,* 228 Mass. 458. *Conant* v. *Constantin,* 247 Mass. 76.

The trial judge submitted the case to the jury with full and accurate instructions upon all issues involved. It follows that in each case the defendant's motion for a directed verdict was properly denied.

After the jury retired, they returned and asked that the seventh and eighth interrogatories, and answers thereto, be read to them. The judge complied with their request. Then counsel for the defendant asked that certain portions of the defendant's testimony also be read; this request was denied. The defendant contends that the reading of the interrogatories and the answers, and the refusal to comply with his request, were prejudicial to the rights of the defendant, and amounted to a charge on the facts. There is no merit in this contention. It was agreed by counsel that the interrogatories and answers should be read, as requested by the jury. The judge was not required in addition to read other testimony of the defendant. It is to be assumed that such testimony was considered by the jury in reaching a verdict. No exception was taken to the refusal by the judge to comply with the defendant's request, which is a sufficient answer to the contention now made in this connection.

Cappucio, on cross-examination, was asked: "Did you tell them at the relief station that she [the plaintiff] met with an accident?" This question was objected to by the defendant, and was allowed by the judge upon the statement of the plaintiff's counsel that he intended to show that what the witness stated at the relief station was contradicted

by his testimony at the trial.  His answer was that he did not remember whether he told them that the plaintiff had been struck by his car.  If it be assumed that this testimony did not tend to contradict what he stated at the trial, the rights of the defendant were not prejudiced.

We perceive no error in the conduct of the trial.

*Exceptions overruled.*